**Tagged Opinion**



**ORDERED in the Southern District of Florida on March 25, 2013.**

_____

Laurel M. Isicoff, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                      Case No.  11-34669-BKC-LMI

DONALD ALAN TOBKIN,                         Chapter 7

       Debtor.
_____/


**ORDER GRANTING IN PART AND DENYING IN PART THE TRUSTEE'S
<u>MOTION FOR TURNOVER</u>**

This matter came before the Court upon the Trustee's Motion for Turnover from Debtor

(ECF #407). Having considered the record, the applicable law, the arguments of both the Debtor

and the Trustee, the Trustee's Motion for Turnover from the Debtor is granted in part and denied in part. [1]

## Factual background

The Debtor, prior to bankruptcy, at one time, was a licensed physician and attorney. The Debtor operated his law practice as a sole proprietor and focused primarily in the area of personal injury and medical malpractice. The Debtor represented several clients on a contingency fee basis.[2]  One of the cases in which the Debtor was involved was *Sharick v. Southeastern University of the Health Sciences, Inc*. 93-15055-CA-15; this case was filed in Miami-Dade County court (the "*Sharick* Matter").

On September 1, 2011, the Debtor filed a voluntary chapter 13 petition. On February 22, 2012 this Court converted the case to chapter 7. The Debtor listed the right to receive a distribution from the *Sharick* Matter in Schedule B of his bankruptcy schedules[3] and further claimed on Schedule C that the contingency fees from this case, along with his fees in other

---

[1] The Debtor filed a Brief Memo and Notice of Citation of Authority to Deny Trustee's Motions for Turnover (ECF # 478) and a Memorandum Opposing Turnover (ECF #512). The Trustee filed a Memorandum of Law in Support of Trustee's Motion for Turnover from Debtor (ECF #511).

[2]  The Debtor also had a business called Gelt Guru that provided cost advances to clients but payments to the Debtor on account of that business are not at issue in this particular dispute.

[3] The Debtor specifically lists in section 16 of his schedule B "'earnings' 'wages' owed from Sharick, & others" valued at $4,345,000.00 and in section 21 of his schedule B  "[e]xclusive of #16 above, Northern Trust MMA, Sharick, Rudolph, Maniatakos, Unum & Dell,Mineo and Fann & Petruccelli etc, & assign of proceeds Fenstersheib & his clients. See attach" valued at $160,000. Further the Debtor lists exempt $3,520,000 in wages pursuant to Fla. Stat. §222.11 in Schedule C.

cases, were exempt. The Chapter 13 Trustee objected to the Debtor's claimed exemptions but those objections were not resolved before the bankruptcy case was converted. [4]

Sometime in November of 2011, the Debtor received $116,276.45 in connection with the *Sharick* Matter (the "*Sharick* Pament").[5] The work the Debtor performed in the *Sharick* matter all took place prepetition.

When the Court converted the case to chapter 7, Jacqueline Calderin was appointed as the Chapter 7 Trustee.  Upon the discovery of the *Sharick* Payment, the Chapter 7 Trustee moved for turnover of the funds. The Debtor, in response, claims 1) that the *Sharick* Payment was received pre-conversion and thus is not property of the chapter 7 bankruptcy estate pursuant to 11 U.S.C. §348(f)(1)(A);  2) that if the *Sharick* Payment is part of the estate, it is exempt pursuant to Fla. Stat. §222.11; and 3) that there are potential factual disputes which might require an evidentiary hearing.[6]  The Trustee in response argues that 1) the *Sharick* funds are property of the chapter 7 estate pursuant to 11 U.S.C. §348(f)(1)(A); 2) that the Debtor improperly scheduled his exemptions;[7]  and 3) that the Debtor is not entitled to exempt the *Sharick* monies under Fla. Stat. §222.11.

---

[4] The Debtor objected to the Chapter 7 Trustee's reliance on the Chapter 13 Trustee's objection to exemptions, claiming that by not filing new objections upon conversion, the Chapter 7 Trustee waived the right to do so. This Court ruled, in connection with a discovery dispute, that the Chapter 7 Trustee did have the ability to rely on the Chapter 13 Trustee's objections upon conversion and that the Chapter 7 Trustee did not have to file her own objections upon conversion. The Debtor appealed this Court's ruling; the District Court declined to hear the interlocutory appeal and dismissed it (ECF #592).
[5] On November 3, 2011 the Debtor signed a Closing Statement in the *Sharick* Matter, indicating that the Debtor was to receive $111,276.45.
[6] The Debtor's Memorandum of Law Opposing Turnover to Chapter 7 Trustee (ECF #512).
[7]  *See supra* note 4.

**Analysis**

*1.  Fla. Stat. §222.11.[8]*

Fla. Stat. §222.11 exempts from garnishment the earnings of a head of family that are less than or equal to $750 a week. Disposable earnings above $750 are also fully exempt unless an individual agrees otherwise in writing. The Debtor argues that the contingent fees he earned as a sole practitioner are exempt pursuant to Fla. Stat §222.11. The Trustee, in turn, argues that the case law indicates that a sole practitioner's contingent fees are not exempt under Fla. Stat. §222.11.

The Florida head of household exemption is an area of the law in which Federal interpretation of Florida law dominates the discussion. The only Florida Supreme Court case that addresses the head of household wage exemption is *Patten Package Co. v. Houser*, 102 Fla. 603, 136 So. 353 (1931). In *Patten*, the defendant, using his truck, delivered petroleum products for petroleum companies with the help of his son.  After a creditor obtained a writ of garnishment

---

[8] Fla. Stat §222.11:

> (1)As used in this section, the term:
> (a)"Earnings" includes compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus.
> (b)"Disposable earnings" means that part of the earnings of any head of family remaining after the deduction from those earnings of any amounts required by law to be withheld.
> (c)"Head of family" includes any natural person who is providing more than one-half of the support for a child or other dependent.
> (2)(a)   All of the disposable earnings of a head of family whose disposable earnings are less than or equal to $750 a week are exempt from attachment or garnishment.
> (b)   Disposable earnings of a head of a family, which are greater than $750 a week, may not be attached or garnished unless such person has agreed otherwise in writing.

4

against the defendant, the defendant moved for the release of the garnishment based on the head

of household exemption.  The Florida Supreme Court, in reversing the holding of the lower

courts that the monies owed to the defendant were exempt, held that the

> [the garnished money] was not to come to him [the defendant] as
> compensation for his personal labor and services….but was to pay
> the expenses which he had advanced or incurred in and about
> making such [a]delivery…. It appears to us that he exemption
> statute cannot be construed to extend to cover a case of this
> kind….It appears that the status of the defendant here was that of
> an independent contractor.

*Patten*, 136 So. at 356.

        The Eleventh Circuit, in *In re Schlein*, 8 F.3d 745(11th Cir. 1993), closely read the *Patten*

decision, its interpretation by other courts, and the history of Fla. Stat. §222.11. The *Schlein*

court reinforced that the Florida head of household exemption does not apply to independent

contractors. After the Eleventh Circuit issued its *Schlein* decision, Fla. Stat. §222.11 was

amended in 1993, among other things, to define the term "earnings" as "compensation paid or

payable, in money of a sum certain for personal services or labor whether denominated as wages,

salary, commission, or bonus."[9]  Since *Schlein* and the 1993 amendments, multiple courts, in

looking at Fla. Stat. §222.11, have arrived at a similar conclusion:  although the head of

household exemption is to be interpreted broadly and its purpose is to prevent the "unfortunate

citizen from being deprived of the necessaries of life"[10] not all forms of making a living fall

within the purview of Fla. Stat. §222.11.

        In *In re Zamora*, 187 B.R. 783 (Bankr. S.D. Fla. 1995) the debtor practiced law as a sole

practitioner (like the debtor here) and owned a marina business. In reading *Schlein* and Fla. Stat.

---

[9] The statute has been amended since 1993 multiple times, but the definition of "earnings" has remained the same.
[10] *Patten*, 136 So. at 355.

§222.11,[11] the *Zamora* court held that the relevant inquiry is not whether a debtor is an

independent contractor; the true test is whether the debtor's activities are a job or more in the

nature of running a business. 187 B.R. at 785. The *Zamora* court determined that a debtor

practicing law as a sole practitioner and running a marina business cannot exempt monies

derived from those activities as exempt because both are in the nature of running a business.

What is important is whether "the debtor had an arms length agreement to perform services that

were much like a job" and whether the debtor had control over the amount of his compensation.

187 B.R. at 785.  Since *Zamora* was issued it has been adopted by Florida Federal District

courts,[12] Florida Bankruptcy courts,[13] and even Florida state courts.[14]

This Court adopts the *Zamora* decision and holds that the Debtor, like the debtor in

*Zamora*, cannot claim as exempt monies earned as a sole practitioner. Therefore the *Sharick*

monies are not exempt.[15]

      2.   *The Sharick Payment and Section 348.*

The Debtor argues that because he received the *Sharick* Payment post-petition but pre-

conversion, pursuant to 11 U.S.C. §348(f)(1)(A)  and *In re Stamm*, 222 F.3d 216 (5th Cir. 2000)

---

[11]   The version of Fla. Stat. §222.11 that the *Zamora* court considered was the version reviewed by the *Schlein* court.  However, the statute was revised prior to the *Zamora* opinion being issued and the court took those changes into account in reaching its conclusion.

[12] *See, e.g., Federal Trade Com'n v. Leshin*, 2011 WL 617500 (S.D. Fla. February 15, 2011); *Pellegrino v. Koeckritz Development of Boca Raton, LLC*, 2009 WL 1437813 (S.D. Fla. May 15, 2009); *In re McDermott,* 425 B.R. 848 (Bankr. M.D. Fla. 2010), aff'd, 2011 WL 740727 (M.D. Fla.  February 14, 2011).

[13] *See, e.g., In re Holmes*, 414 B.R. 868 (Bankr. S.D. Fla. 2009); *In re Pettit*, 224 B.R. 834 (Bankr. M.D. Fla. 1998); *In re Lee*, 190 B.R. 953 (Bankr. M.D. Fla. 1995).

[14] *See, e.g., Brock v. Westport Recovery Corp.*, 832 So.2d 209, 213 (Fla. 4th DCA 2002); *Vining v. Segal*, 731 So.2d 826 (Fla. 3d DCA 1999).

[15] This is not an easy decision for the Court. Debtors that are independent contractors and run their own business also have to worry about providing for their families. This Court recognizes the importance of this decision not only for this Debtor, but other debtors in similar circumstances. Because federal courts dominate the interpretation of Florida's head of household wage exemption, to the extent this issue reaches the Eleventh Circuit Court of Appeals, this Court respectfully suggests that this matter should be certified to the Florida Supreme Court- a step that this Court is unable to take under applicable law.

("*Stamm*"), the *Sharick* Payment is not part of the chapter 7 bankruptcy estate. The Trustee, in

turn, argues that because the Debtor's entitlement to the receipt of the *Sharick* Payment existed

pre-petition,[16] pursuant to 11 U.S.C. §348(f)(1)(A), the *Sharick* monies are now part of the

chapter 7 bankruptcy estate.

Pursuant to 11 U.S.C. §348(f)(1)(A), upon conversion of a chapter 13 case to a chapter 7

case "property of the estate in the converted case shall consist of property of the estate, as of the

date of filing of the petition, that remains in the possession of or is under the control of the debtor

on the date of conversion." The case law overwhelmingly holds that when a debtor's entitlement

to the receipt of property exists pre-petition, no matter how contingent or speculative, pursuant to

11 U.S.C. §541, that right to property is part of the bankruptcy estate.[17]  In this case, the

Debtor's entitlement to the *Sharick* Payment existed on the date the Debtor filed his chapter 13

petition and, consequently, pursuant to 11 U.S.C. §348(f)(1)(A), as of the date of the filing of

bankruptcy, the *Sharick* Payment, or so much as was still within the Debtor's possession on the

conversion date, would be part of the chapter 7 estate.

In *In re Salazar*, 465 B.R. 875 (9th Cir. BAP 2012) ("*Salazar*") the Ninth Circuit BAP

addressed the precise issue before this Court. In *Salazar*, the chapter 13 debtors, post-petition,

received a tax return that was part of the bankruptcy estate. The debtors ultimately failed to

confirm a plan and the bankruptcy court converted the case to chapter 7. By the time of the

conversion, the debtors had already spent the tax refund. The *Salazar* court held that a plain

reading of section 348(f)(1)(A) "leads us to the conclusion that the Prepetition Refund, having

---

[16] The Debtor acknowledged in court that the obligation to pay his contingency fee in the *Sharick* Matter matured prepetition.

[17] *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993) ("When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of estate.... [E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within reach of 11 U.S.C. § 541.") (citations omitted).

been spent, is not property of the estate on conversion." 465 B.R. at 880. The *Salazar* court relied on *In re LaFlamme*, 397 B.R. 194, 201 (Bankr. D.N.H. 2008) ("*LaFlamme*"), which held that because debtors have an "implicit right" to use property of the chapter 13 estate, a debtor may use that property for "ordinary" and "necessary" living expenses while in chapter 13.

The court in *Pagano v. Pergament*, 2012 WL 1828854 (E.D. N.Y. May 16, 2012) ("*Pergament*"), in analyzing the same issue, strongly disagreed with the "plain reading" analysis of section 348(f)(1)(A) in *Salazar*. Judge Feuerstein, in *Pergament*, held that "in enacting Section 348(f), Congress intended to equalize the treatment of a debtor in a Chapter 13 case that is subsequently converted to a Chapter 7 case with the treatment of a debtor who filed a Chapter 7 petition originally" and that "§348(f) was never designed to be a safe harbor for debtors who fraudulently and surreptitiously dispose of property of the estate while in chapter 13." *Pergament* at *4-5. The *Pergament* court, although at first seeming to disagree with *Salazar*, ultimately adopted the approach of *LaFlamme*: courts should not "reward shenanigans by debtors in failing Chapter 13 cases," a debtor's use of chapter 13 assets needs to be for ordinary and necessary living expenses, and the conversion to chapter 7 cannot be in bad faith. *Pergament*, 2012 WL 1828854 at *5-6. Money used for ordinary and necessary living expenses during the chapter 13 case is not included in the chapter 7 estate. *LaFlamme,* 397 B.R.at 205-06.

The Debtor's reliance on *Stamm* is inapposite. In *Stamm* the debtors initially filed for chapter 13 and after their failure to confirm a plan, converted the case to chapter 7.The *Stamm* court held that "the Debtors' wages, earned after the filing of their Chapter 13 petition and before discharge under Chapter 7, are not part of the Chapter 7 estate." 222 F.3d at 218.  Unlike in *Stamm,* in this case the Debtor earned the right to payment in the *Sharick* Matter before the filing of his Chapter 13 case.

This Court agrees with the approach of *LaFlamme*, *Pergament*, and *Salazar*.  Congress did not intend section 348(f)(1)(A) to allow debtors to freely dispose of property during chapter 13 proceedings that would otherwise have been part of the chapter 7 estate had a case been originally filed under chapter 7;  "the debtor's use of estate property in chapter 13 prior to conversion to chapter 7 is subject to 'good faith' scrutiny." *Salazar*, 465 B.R. at 882.  In this case, the conversion to chapter 7 was not in bad faith; it occurred at the behest of a creditor and against the Debtor's wishes. Notwithstanding the lack of bad faith in the conversion, to the extent the Debtor did not use a portion of the *Sharick* Payment for "ordinary" and "necessary" living expenses prior to conversion, the balance of the *Sharick* Payment became property of the Debtor's chapter 7 bankruptcy estate.

## Conclusion

The *Sharick* Payment is not exempt pursuant to Fla. Stat. §222.11. Further, pursuant to section 348(f)(1)(A), the *Sharick* Payment, to the extent  any portion was not used for "ordinary" and "necessary" living expenses, is property of the chapter 7 estate. Therefore the Trustee's Motion for Turnover from Debtor (ECF #407) is granted in part and denied in part. The Debtor claims that he used the entire *Sharick* Payment for living and upkeep expenses for himself and his children between the time he received the money and conversion of the case.  The Debtor will have to prove that there is no money left and that the money was used only for ordinary and necessary living expenses.  An evidentiary hearing on the Debtor's use of the *Sharick* Payment will be scheduled by separate order.

###

Copies to:
Donald Alan Tobkin, Debtor.
Jason Slatkin, Esq.

*Attorney Slatkin is directed to serve a copy of this order upon all interested parties and file a certificate of service with the clerk of court.*